# EXHIBIT A



*Filed and Attested by the*
*Office of Judicial Records*
*27 JAN 2022 05:59 pm*
*S. RICE*

Sarah T. Hansel, Esq.
**MOTLEY RICE LLC**
Attorney I.D. No. 319224
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
(856) 382-4669
(856) 667-5133 (FAX)
shansel@motleyrice.com

Fidelma Fitzpatrick, Esq,
**MOTLEY RICE LLC**
55 Cedar St., STE 100
Providence, RI 02903
(401) 457-7728
(401) 457-7708 |
ffitzpatrick@motleyrice.com

**ATTORNEYS FOR PLAINTIFFS**

---

SHAUN EDGAR KOONTZ
172 Parkview Circle
Grantsville, MD 21536

JOHN PIERCE
7808 Wise Lane
Knoxville, TN 37920

PHYLLIS WELSH
9 66th Street
South Haven, MI 49090

FRANK BAXTER
7905 East Farm Road 174
Rogersville, MO 65742

ROBERT HOFFMAN, JR.
705 Columbia Avenue
Lake Waccamaw, NC 28450

**PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
TRIAL DIVISION**

January Term, 2022
No._____

DEMAND FOR A JURY TRIAL

1

Case ID: 220102344

HARRY HOOTS, JR.
861 Tracy Grove Road
Flat Rock, NC 28731

ESTATE OF KENNETH WADE, SR
1041 Christian Court
Watkinsville, GA 30677

GEORGE CARPENTER
3910 East Bellevue Hwy
Eaton Rapids, MI 48827

       Plaintiffs,

v.

SYNGENTA CROP PROTECTION, LLC
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

CHEVRON U.S.A. INC
6001 Bollinger Canyon Road D1248
San Ramon, CA 94583

FMC CORPORATION
2929 Walnut Street
Philadelphia, PA 19104

       Defendants.

_____

Case ID: 220102344

# NOTICE TO PLEAD

**NOTICE** You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**AVISO** Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siquientes, usted tiene veinte (20) dias de plazo al partir de la fecha de lan demanda y la notificacion. Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIOI, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

**PHILADELPHIA COUNTY BAR ASSOCIATION**
LAWYER REFERRAL AND INFORMATION SERVICE
ONE READING CENTER
PHILADELPHIA, PENNSYLVANIA  19107 TELEPHONE:
(215) 238-6333
TTY (215) 451-6197

**ASOCIACION DE LICENCIADOS DE  FILADELFIA**
SERVICIO DE REFERENCIA E INFORMACION LEGAL
ONE READING CENTER
PHILADELPHIA, PENNSYLVANIA  19107
TELEPHONE:  (215) 238-6333
TTY (215) 451-6197

Case ID: 220102344

Sarah T. Hansel, Esq.
**MOTLEY RICE LLC**
Attorney I.D. No. 319224
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
(856) 382-4669
(856) 667-5133 (FAX)
shansel@motleyrice.com

Fidelma Fitzpatrick, Esq,
**MOTLEY RICE LLC**
55 Cedar St., STE 100
Providence, RI 02903
(401) 457-7728
(401) 457-7708 |
ffitzpatrick@motleyrice.com

**ATTORNEYS FOR PLAINTIFFS**

---

**PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
TRIAL DIVISION**

SHAUN EDGAR KOONTZ
172 Parkview Circle
Grantsville, MD 21536

January Term, 2022
No._____

JOHN PIERCE
7808 Wise Lane
Knoxville, TN 37920

DEMAND FOR A JURY TRIAL

PHYLLIS WELSH
9 66th Street
South Haven, MI 49090

FRANK BAXTER
7905 East Farm Road 174
Rogersville, MO 65742

ROBERT HOFFMAN, JR.
705 Columbia Avenue
Lake Waccamaw, NC 28450

HARRY HOOTS, JR.
861 Tracy Grove Road
Flat Rock, NC 28731

Case ID: 220102344

ESTATE OF KENNETH WADE, SR
1041 Christian Court
Watkinsville, GA 30677

GEORGE CARPENTER
3910 East Bellevue Hwy
Eaton Rapids, MI 48827

        Plaintiffs,

v.

SYNGENTA CROP PROTECTION, LLC
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

CHEVRON U.S.A. INC
6001 Bollinger Canyon Road D1248
San Ramon, CA 94583

FMC CORPORATION
2929 Walnut Street
Philadelphia, PA 19104

        Defendants.

_____

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Shaun Edgar Koontz, John Pierce, Phyllis Welsh, Frank Baxter, Robert Hoffman, Jr., Harry Hoots, Jr., Estate of Kenneth Wade, Sr., and George Carpenter ("Plaintiffs") by undersigned counsel, hereby submit this Complaint against the above-captioned Defendants for equitable relief, monetary restitution, and/or compensatory and punitive damages. Plaintiffs make the following allegations based upon personal knowledge, and upon information and belief, as well as their attorneys' investigative efforts, regarding Paraquat and its connection to Parkinson's disease.

## STATEMENT OF THE CASE

1.    This is a products liability action against the above-named Defendants (hereinafter,

Case ID: 220102344

collectively referred to as "Defendants") because Plaintiffs suffered from the severe effects of Parkinson's disease caused by exposure to Paraquat Products ("PRODUCTS") which were sold, manufactured, distributed, and/or marketed by Defendants.

2.     Plaintiffs, through this action, seek recovery for damages as a result of developing Parkinson's disease, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of Paraquat, and the attendant effects of developing Parkinson's disease.

3.     At all relevant times, all Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of PRODUCTS, and introduced such products into interstate commerce with knowledge and intent that such products be sold in all States of the United States.

4.     Defendants concealed and continue to conceal their knowledge of the PRODUCTS' unreasonably dangerous risks from Plaintiffs, other consumers, and the medical community. Specifically, Defendants failed to adequately inform Plaintiffs, consumers, and the medical community about the known risks of Parkinson's disease associated with the use of the PRODUCTS.

## JURISDICTION AND VENUE

5.     At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising Paraquat products.

6.     At all times relevant hereto, Defendants had offices in Pennsylvania and/or regularly solicited and transacted business in the Commonwealth of Pennsylvania and Philadelphia County. In addition, the Defendants reasonably expected that their Products would be used

3

or consumed in Pennsylvania and Philadelphia County.

7.    This is an action for damages which exceeds fifty thousand dollars ($50,000).

8.    Plaintiffs have timely filed this lawsuit within two years of discovering their cause of action as defined and require by Pennsylvania 42 Pa. Cons. State. § 5524(2).

9.    Venue of this case is proper in Philadelphia County because Defendants regularly conduct business in Philadelphia County.

10.    Defendant FMC Corporation is headquartered in Philadelphia and maintains a registered agent in Philadelphia.

11.    Defendant CHEVRON U.S.A. INC regularly conducts substantial business in Philadelphia. Defendant Syngenta Crop Protection, LLC ("SCPLLC") regularly conducts substantial business in Philadelphia.

12.    This is a complex product liability tort case. This Court is renowned for its ability and resources to handle complex tort litigation dockets in an organized and efficient fashion.  No other county in Pennsylvania is better suited to handle such claims.

13.    Pursuant to Pa. R.C.P. 1006(c) in actions alleging joint and several liability against two or more defendants, venue is proper if it is proper as to any of the defendants. In this case, Plaintiffs allege joint and several liability on more than two defendants. Philadelphia County is the proper venue for a number of these defendants. Therefore, venue is proper on all defendants.

14.    General and/or specific personal jurisdiction is proper as to Defendants for the reasons stated below.

15.    Jurisdiction is proper as to Chevron U.S.A. in Pennsylvania because it 1) is "at home" in Pennsylvania, 2) it maintains significant business in Pennsylvania, and 3) it consented to jurisdiction in Pennsylvania by registering to do business in Pennsylvania. *See, e.g., Bors*

4

Case ID: 220102344

*v. Johnson & Johnson, No.* CV 16-2866, 2016 WL 517286 at *1 (E.D. Pa. Sept. 20, 2016).

16.     Jurisdiction is proper as to the Syngenta Crop Protection, LLC because 1) Syngenta Crop Protection, LLC regularly employs employees in Pennsylvania and maintains significant contacts with Pennsylvania, 2) Syngenta Crop Protection, LLC. consented to jurisdiction in Pennsylvania by registering to do business in Pennsylvania. *See, e.g., Bors v. Johnson & Johnson*, No. CV 16- 2866, 2016 WL 517286 at *1 (E.D. Pa. Sept. 20, 2016), 3) Syngenta Crop Protection, LLC maintains significant contacts in Pennsylvania, including but not limited to the sale of its dangerous Paraquat PRODUCTS to consumers in Pennsylvania, and 4) Syngenta Crop Protection, LLC purposefully sought to suppress warnings on the risk that Paraquat posed to those using the PRODUCTS for Parkinson's disease, to omit any warnings on the PRODUCTS, and to prevent regulation of the PRODUCTS so as not to negatively affect sales and maximize Defendants' profits in the Commonwealth of Pennsylvania. *Skipworth by Williams v. Lead Industries Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997).

17.     Jurisdiction is proper as to FMC Corporation Inc. in Pennsylvania because it 1) is "at home" in Pennsylvania, 2) it maintains significant business in Pennsylvania, and 3) it consented to jurisdiction in Pennsylvania by registering to do business in Pennsylvania. *See, e.g., Bors v. Johnson & Johnson*, No. CV 16-2866, 2016 WL 517286 at *1 (E.D. Pa. Sept. 20, 2016).

18.     Specific jurisdiction is proper over each Defendant because this suit arises out of and relates to Defendants' contacts with Pennsylvania.

## PLAINTIFFS' EXPOSURE TO PARAQUAT

19.     Plaintiffs were exposed to Paraquat (1) when it was mixed, loaded, applied, and/or cleaned; (2) as a result of spray drift (the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind); and/or (3) as a result of contact with sprayed plants.

5

Case ID: 220102344

20.     At all relevant times, it was reasonably foreseeable that when Paraquat was used in the intended or a reasonably foreseeable manner, users of Paraquat and persons nearby would be exposed to it.

21.     At all relevant times, it was reasonably foreseeable that Paraquat could enter the human body: (1) through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage were present); (2) through the olfactory bulb; (3) through respiration into the lungs; and (4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways.

## PARAQUAT CAUSES PARKINSON'S DISEASE

22.     At all relevant times, it was reasonably foreseeable that Paraquat that entered a human body could ultimately enter the brain.

23.     At all relevant times, it was reasonably foreseeable that Paraquat that entered a human body could induce the misfolding of the alpha synuclein protein.

24.     Parkinson's disease is a progressive neurodegenerative disorder of the brain that affects primarily the motor system-the part of the central nervous system that controls movement.

25.     The characteristic symptoms of Parkinson's disease are its "primary" motor symptoms: resting tremor (shaking movement when the muscles are relaxed), bradykinesia (slowness in voluntary movement and reflexes), rigidity (stiffness and resistance to passive movement), and postural instability (impaired balance).

26.     Parkinson's disease's primary motor symptoms often result in "secondary" motor symptoms such as freezing of gait; shrinking handwriting; mask-like expression; slurred, monotonous, quiet voice; stooped posture; muscle spasms; impaired coordination;

6

Case ID: 220102344

difficulty swallowing; and excess saliva and drooling caused by reduced swallowing movements.

27. Non-motor symptoms-such as loss of or altered sense of smell; constipation; low blood pressure on rising to stand; sleep disturbances; and depression-are present in most cases of Parkinson's disease, often for years before any of the primary motor symptoms appear.

28. There is currently no cure for Parkinson's disease; no treatment will stop or reverse its progression; and the treatments most commonly prescribed for its motor symptoms tend to become progressively less effective, and to increasingly cause unwelcome side effects, the longer they are used.

29. One of the primary pathophysiological hallmarks of Parkinson's disease is the selective degeneration and death of dopaminergic neurons (dopamine-producing nerve cells) in a part of the brain called the substantia nigra pars compacta ("SNpc").

30. Dopamine is a neurotransmitter (a chemical messenger that transmits signals from one neuron to another neuron, muscle cell, or gland cell) that is critical to the brain's control of motor function (among other things).

31. The death of dopaminergic neurons in the SNpc decreases the production of dopamine. Once dopaminergic neurons die, they are not replaced; when enough dopaminergic neurons have died, dopamine production falls below the level the brain requires for proper control of motor function, resulting in the motor symptoms of Parkinson's disease.

32. The presence of Lewy bodies (insoluble aggregates of a protein called alpha-synuclein) in many of the remaining dopaminergic neurons in the SNpc is another of the primary pathophysiological hallmarks of Parkinson's disease.

33. Dopaminergic neurons are particularly susceptible to oxidative stress, a disturbance in the normal balance between oxidants present in cells and cells' antioxidant defenses.

7

Case ID: 220102344

34.     Scientists who study Parkinson's disease generally agree that oxidative stress is a major factor in-if not the precipitating cause of-the degeneration and death of dopaminergic neurons in the SNpc and the accumulation of Lewy bodies in the remaining dopaminergic neurons that are the primary pathophysiological hallmarks of the disease.

35.     Paraquat is highly toxic to both plants and animals, creating oxidative stress that causes or contributes to cause the degeneration and death of plant or animal cells.

36.     Paraquat creates oxidative stress in the cells of plants and animals because of "redox properties" that are inherent in its chemical composition and structure: it is a strong oxidant, and it readily undergoes "redox cycling" in the presence of molecular oxygen, which is plentiful in living cells.

37.     The redox cycling of Paraquat in living cells interferes with cellular functions that are necessary to sustain life-with photosynthesis in plant cells, and with cellular respiration in animal cells. The redox cycling of Paraquat in living cells creates a "reactive oxygen species" known as superoxide radical, an extremely reactive molecule that can initiate a cascading series of chemical reactions that creates other reactive oxygen species that damage lipids, proteins, and nucleic acids, molecules that are essential components of the structures and functions of living cells. Because the redox cycling of Paraquat can repeat indefinitely in the conditions typically present in living cells, a single molecule of Paraquat can trigger the production of countless molecules of destructive superoxide radical.

38.     Paraquat's redox properties have been known to science since at least the 1930s.

39.     It has been scientifically known since the 1960s that Paraquat (due to its redox properties) is toxic to the cells of plants and animals. The same redox properties that make Paraquat toxic to plant cells and other types of animal cells make it toxic to dopaminergic neurons in humans—that is, Paraquat is a strong oxidant that interferes with the function of,

Case ID: 220102344

damages, and ultimately kills dopaminergic neurons in the human brain by creating oxidative stress through redox cycling.

40.   Paraquat is one of only a handful of toxins that scientists use to produce animal models of Parkinson's disease, i.e., use in a laboratory to artificially produce the symptoms of Parkinson's disease in animals.

41.   Animal studies involving various routes of exposure have found that Paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons in the SNpc, other pathophysiology consistent with that seen in human Parkinson's disease, and motor deficits and behavioral changes consistent with those commonly seen in human Parkinson's disease.

42.   Hundreds of in vitro studies (experiments in a test tube, culture dish, or other controlled experimental environment) have found that Paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons (and many other types of animal cells).

43.   Epidemiological studies have found that exposure to Paraquat significantly increases the risk of contracting Parkinson's disease. A number of studies have found that the risk of Parkinson's disease is more than double in populations with occupational exposure to Paraquat compared to populations without such exposure.

44.   These convergent lines of evidence (toxicology, animal experiments, and epidemiology) demonstrate that Paraquat exposure generally can cause Parkinson's disease.

## PARAQUAT REGULATION

45.   The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., which regulates the distribution, sale, and use of pesticides within the U.S., requires that pesticides be registered with the U.S. Environmental Protection Agency ("EPA") prior to

Case ID: 220102344

their distribution, sale, or use, except as described by FIFRA. 7 U.S.C. 136a(a).

46. The Pennsylvania Pesticide Control Act of 1973, which regulates the labeling, distribution, use, and application of pesticides within the State of Pennsylvania, requires that pesticides be registered with the Pennsylvania Department of Agriculture before they are sold in Pennsylvania.

47. Paraquat is a "restricted use pesticide" under federal law, see 40 C.F.R. § 152.175, which means it is "limited to use by or under the direct supervision of a certified applicator."

48. As part of the pesticide registration process, the EPA requires, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment.

49. As a general rule, FIFRA requires registrants, the chemical companies registered to sell the pesticides, to perform health and safety testing of pesticides. However, FIFRA does not require the EPA itself to perform health and safety testing of pesticides, and the EPA generally does not perform such testing.

50. The EPA registers (or re-registers) a pesticide if it is persuaded, based largely on studies and data submitted by the registrant, that: (1) its composition is such as to warrant the proposed claims for it, 7 U.S.C. § 136a(c)(5)(A); (2) its labeling and other material required to be submitted comply with the requirements of FIFRA, 7 U.S.C. § 136a(c)(5)(B); (3) it will perform its intended function without unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(C); and (4) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(D).

51. FIFRA defines "unreasonable adverse effects on the environment" as "any unreasonable risk to man or the environment, taking into account the economic, social, and

Case ID: 220102344

environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

52.    Under FIFRA, "[a]s long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of [FIFRA]." 7 U.S.C. § 136a(f)(2). However, FIFRA further provides that "[i]n no event shall registration of an article be construed as a defense for the commission of any offense under [FIFRA]." 7 U.S.C. § 136a(f)(2).

53.    The distribution or sale of a pesticide that is misbranded is an offense under FIFRA, which provides in relevant part that "it shall be unlawful for any person in any State to distribute or sell to any person ... any pesticide which is ... misbranded." 7 U.S.C. § 136j(a)(1)(E). A pesticide is misbranded under FIFRA if, among other things: (1) its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular, 7 U.S.C. § 136(q)(1)(A); (2) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment, 7 U.S.C. § 136(q)(1)(F); or (3) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment," 7 U.S.C. § 136(q)(1)(G).

54.    As a result, a pesticide may be misbranded despite an EPA determination that it met FIFRA's registration criteria. In other words, notwithstanding its registration, a pesticide is misbranded if its label contains "false or misleading" statements, has inadequate instructions for use, or omits warnings or cautionary statements necessary to protect human health. Similarly, a pesticide may be found to cause unreasonable adverse effects on

11

Case ID: 220102344

humans when used according to the approved label despite a determination by the EPA that it would not.

55.     Plaintiffs do not seek in this action to impose on Defendants any labeling or packaging requirement in addition to or different from those required under FIFRA. Any allegation in this Complaint that a Defendant breached a duty to provide adequate directions for the use of or warnings about Paraquat, breached a duty to provide adequate packaging for Paraquat, concealed, suppressed, or omitted to disclose any material fact about Paraquat, or engaged in any unfair or deceptive practice regarding Paraquat, is intended and should be construed to be consistent with that alleged breach, concealment, suppression, or omission, or unfair or deceptive practice having rendered the Paraquat "misbranded" under FIFRA. However, Plaintiffs bring claims and seek relief in this action only under state law and does not bring any claims or seek any relief in this action under FIFRA.

## ACTS OF SYNGENTA DEFENDANTS

56.     SCPLLC is a limited liability company organized under the laws of the State of Delaware. It is a successor by merger or continuation of business to its corporate predecessors, including but not limited to ICI Americas. SCPLLC is registered in Pennsylvania to do business in the State of Pennsylvania.

57.     SCPLLC or its corporate predecessors have sufficient minimum contacts with the State of Pennsylvania and have purposefully availed themselves of the privileges of conducting business in the State of Pennsylvania, in that they:

        a.      secured and maintained the registration of Paraquat products and other pesticides with the CDPR to enable themselves and others to manufacture, distribute, sell, and use these products in the State of Pennsylvania;

        b.      marketed, licensed, advertised, distributed, sold, and delivered Paraquat and

12

Case ID: 220102344

other pesticides to chemical companies, licensees, distributors, and dealers whom they expected to distribute and sell Paraquat and other pesticides in or for use in the State of Pennsylvania, including the Chevron Defendants, FMC Defendant, and "Syngenta Retailers," as well as to applicators and farmers in the State of Pennsylvania; and

c.   employed or utilized sales representatives to market and sell Paraquat and other pesticides in Pennsylvania.

58.   SCPLLC's contacts with the State of Pennsylvania are related to or gave rise to this controversy.

### **ACTS OF CHEVRON DEFENDANT**

59.   Chevron U.S.A., Inc. is a corporation organized under the laws of the State of Pennsylvania, with its headquarters and principal place of business in San Ramon, California.

60.   Jurisdiction and venue are proper over Chevron U.S.A. Inc. because it:

a.   secured and maintained the registration of Paraquat products and other pesticides with the CDPR to enable themselves and others to manufacture, distribute, sell, and use these products in the State of Pennsylvania;

b.   marketed, licensed, advertised, distributed, sold, and delivered Paraquat and other pesticides to chemical companies, licensees, distributors, and dealers whom they expected to distribute and sell Paraquat and other pesticides in or for use in the State of Pennsylvania, including the Chevron Defendants, FMC Corporation, and "Syngenta Retailers," as well as to applicators and farmers in the State of Pennsylvania;

c.   is incorporated in the State of Pennsylvania; and

13

Case ID: 220102344

d.  conducted substantial business in the State of Pennsylvania and County of Philadelphia.

## ACTS OF FMC CORPORATION

61. Defendant FMC Corporation is a Delaware corporation with its headquarters and principal place of business in Philadelphia, Pennsylvania.  FMC Corporation acquired and merged with Cheminova A/S, a member of the JGTF, and is the successor corporation to Cheminvoa A/S.

62. Defendant FMC Corporation marketed, sold, and distributed Paraquat products and or/surfactants and other pesticides for intended for use in combination with Paraquat in Pennsylvania for use in Pennsylvania.

## PLAINTIFF SHAUN EDGAR KOONTZ'S EXPOSURE TO PARAQUAT AND DEFENDANTS' TORTIOUS CONDUCT RESULTED IN DEVELOPING PARKINSON'S DISEASE

63. Plaintiff Shaun Edgar Koontz hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

64. Plaintiff Shaun Edgar Koontz is a resident of Grantsville, Maryland.

65. Plaintiff Shaun Edgar Koontz was exposed to Paraquat manufactured and sold by Defendants.

66. Plaintiff Shaun Edgar Koontz lived on a farm in Pennsylvania from the early 1970s until approximately 1983, where he was directly exposed during the spraying, mixing, loading, and/or cleaning of equipment required to apply Paraquat.

67. During this time, Plaintiff Shaun Edgar Koontz was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants. During that time, Plaintiff Shaun Edgar Koontz would have been present for the mixing, loading, spraying, and/or

Case ID: 220102344

cleaning of Paraquat.

68.    The Paraquat to which Plaintiff Shaun Edgar Koontz was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or 2) through the olfactory bulb; and/or 3) through respiration into the lungs; and/or 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

69.    Plaintiff Shaun Edgar Koontz was diagnosed with Parkinson's disease in or about 2014.

70.    Plaintiff Shaun Edgar Koontz had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

71.    Plaintiff Shaun Edgar Koontz was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

72.    Plaintiff Shaun Edgar Koontz heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

73.    Plaintiff Shaun Edgar Koontz had no reason to suspect that his living in on the farm where Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

74.    Defendants' acts and omissions were a legal, proximate, and substantial factor in causing Plaintiff Shaun Edgar Koontz to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

75.    By reason of the premises, it became necessary for Plaintiff Shaun Edgar Koontz to incur expenses from medical care and treatment, and related costs and expenses required in the

15

Case ID: 220102344

care and treatment of said injuries. Plaintiff Shaun Edgar Koontz's damages in this respect are presently unascertained as said services are still continuing.

76.     By reason of the premises, it will be necessary for Plaintiff Shaun Edgar Koontz to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Plaintiff Shaun Edgar Koontz's damages in this respect are presently unascertained as said services are still continuing. Plaintiff Shaun Edgar Koontz prays leave to insert elements of damages in this respect when the same are finally determined.

77.     By reason of the premises, Plaintiff Shaun Edgar Koontz has been at times unable to follow regular employment, incurring special damages in a presently unascertained sum, as said, loss is still continuing. Plaintiff Shaun Edgar Koontz prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

78.     By reason of the premises, Plaintiff Shaun Edgar Koontz has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

79.     By reason of the premises, Plaintiff Shaun Edgar Koontz has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

### PLAINTIFF JOHN PIERCE'S EXPOSURE TO PARAQUAT AND DEFENDANTS' TORTIOUS CONDUCT RESULTED IN DEVELOPING PARKINSON'S DISEASE

80.     Plaintiff John Pierce hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

81.     Plaintiff John Pierce is a resident of Knoxville, Tennessee.

82.     Plaintiff John Pierce was exposed to Paraquat manufactured and sold by Defendants.

Case ID: 220102344

83.     Plaintiff John Pierce worked on a farm in Tennessee from approximately 1979 until approximately 1984, where he was directly exposed during the spraying, mixing, loading, and/or cleaning of equipment required to apply Paraquat.

84.     During this time, Plaintiff John Pierce was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants. During that time, Plaintiff John Pierce would also mix, load, spray, and/or clean Paraquat.

85.     The Paraquat to which Plaintiff John Pierce was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or 2) through the olfactory bulb; and/or 3) through respiration into the lungs; and/or 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

86.     Plaintiff John Pierce was diagnosed with Parkinson's disease in or about 1984.

87.     Plaintiff John Pierce had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

88.     Plaintiff John Pierce was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

89.     Plaintiff John Pierce heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

90.     Plaintiff John Pierce had no reason to suspect that his living in on the farm where Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

91.     Defendants' acts and omissions were a legal, proximate, and substantial factor in causing

Case ID: 220102344

Plaintiff John Pierce to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

92. By reason of the premises, it became necessary for Plaintiff John Pierce to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Plaintiff John Pierce's damages in this respect are presently unascertained as said services are still continuing.

93. By reason of the premises, it will be necessary for Plaintiff John Pierce to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Plaintiff John Pierce's damages in this respect are presently unascertained as said services are still continuing. Plaintiff John Pierce prays leave to insert elements of damages in this respect when the same are finally determined.

94. By reason of the premises, Plaintiff John Pierce has been at times unable to follow regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Plaintiff John Pierce prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

95. By reason of the premises, Plaintiff John Pierce has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

96. By reason of the premises, Plaintiff John Pierce has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

## PLAINTIFF PHYLLIS WELSH'S EXPOSURE TO PARAQUAT AND DEFENDANTS' TORTIOUS CONDUCT RESULTED IN HER DEVELOPING PARKINSON'S DISEASE

97. Plaintiff Phillis Welsh hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of

Case ID: 220102344

the following allegations.

98.    Plaintiff Phyllis Welsh is a resident of South Haven, Michigan.

99.    Plaintiff Phyllis Welsh was exposed to Paraquat manufactured and sold by Defendants.

100.   Plaintiff Phyllis Welsh lived on a farm in Michigan from approximately 1968 until approximately 1979, where she was directly exposed during the spraying, mixing, loading, and/or cleaning of equipment required to apply Paraquat.

101.   During this time, Plaintiff Phyllis Welsh was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants. During that time, Plaintiff Phyllis Welsh would also have been present for the mixing, loading, spraying, and/or cleaning of Paraquat.

102.   The Paraquat to which Plaintiff Phyllis Welsh was exposed entered her body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or 2) through the olfactory bulb; and/or 3) through respiration into the lungs; and/or 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered her bloodstream, attacked her nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

103.   Plaintiff Phyllis Welsh was diagnosed with Parkinson's disease in or about 2018.

104.   Plaintiff Phyllis Welsh had no reason to suspect the diagnosis was connected to her past Paraquat exposure.

105.   Plaintiff Phyllis Welsh was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

106.   Plaintiff Phyllis Welsh heard of the linkage between Paraquat and Parkinson's disease

19

Case ID: 220102344

within a year of filing this action.

107.     Plaintiff Phyllis Welsh had no reason to suspect that her living on the farms where Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

108.     Defendants' acts and omissions were a legal, proximate, and substantial factor in causing Plaintiff Phyllis Welsh to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of her life.

109.     By reason of the premises, it became necessary for Plaintiff Phyllis Welsh to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Plaintiff Phyllis Welsh's damages in this respect are presently unascertained as said services are still continuing.

110.     By reason of the premises, it will be necessary for Plaintiff Phyllis Welsh to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Plaintiff Phyllis Welsh's damages in this respect are presently unascertained as said services are still continuing. Plaintiff Phyllis Welsh prays leave to insert elements of damages in this respect when the same are finally determined.

111.     By reason of the premises, Plaintiff Phyllis Welsh has been at times unable to regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Plaintiff Phyllis Welsh prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

112.     By reason of the premises, Plaintiff Phyllis Welsh has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

113.     By reason of the premises, Plaintiff Phyllis Welsh has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

Case ID: 220102344

## PLAINTIFF FRANK BAXTER'S EXPOSURE TO PARAQUAT AND DEFENDANTS' TORTIOUS CONDUCT RESULTED IN HIS DEVELOPING PARKINSON'S DISEASE

114.   Plaintiff Frank Baxter hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

115.   Plaintiff Frank Baxter is a resident of Rogersville, Missouri.

116.   Plaintiff Frank Baxter was exposed to Paraquat manufactured and sold by Defendants.

117.   Plaintiff Frank Baxter worked on farms in Missouri from approximately 1977 until approximately 1979, where he was directly exposed during the spraying, mixing, loading, and/or cleaning of equipment required to apply Paraquat.

118.   During this time, Plaintiff Frank Baxter was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants. During that time, Plaintiff Frank Baxter would also mix, load, spray, and/or clean Paraquat.

119.   The Paraquat to which Plaintiff Frank Baxter was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or 2) through the olfactory bulb; and/or 3) through respiration into the lungs; and/or 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

120.   Plaintiff Frank Baxter was diagnosed with Parkinson's disease in or about 2004.

121.   Plaintiff Frank Baxter had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

Case ID: 220102344

122.    Plaintiff Frank Baxter was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

123.    Plaintiff Frank Baxter heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

124.    Plaintiff Frank Baxter had no reason to suspect that his working on the farm where Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

125.    Defendants' acts and omissions were a legal, proximate, and substantial factor in causing Plaintiff Frank Baxter to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

126.    By reason of the premises, it became necessary for Plaintiff Frank Baxter to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Plaintiff Frank Baxter's damages in this respect are presently unascertained as said services are still continuing.

127.    By reason of the premises, it will be necessary for Plaintiff Frank Baxter to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Plaintiff Frank Baxter's damages in this respect are presently unascertained as said services are still continuing. Plaintiff Frank Baxter prays leave to insert elements of damages in this respect when the same are finally determined.

128.    By reason of the premises, Plaintiff Frank Baxter has been at times unable to follow regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Plaintiff Frank Baxter prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

129.    By reason of the premises, Plaintiff Frank Baxter has suffered general (non-economic)

22

damages in a sum in excess of the jurisdictional minimum of this court.

130. By reason of the premises, Plaintiff Frank Baxter has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

### PLAINTIFF ROBERT HOFFMAN, JR.'S EXPOSURE TO PARAQUAT AND DEFENDANTS' TORTIOUS CONDUCT RESULTED IN HIS DEVELOPING PARKINSON'S DISEASE

131. Plaintiff Robert Hoffman, Jr. hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

132. Plaintiff Robert Hoffman, Jr. is a resident of Lake Waccamaw, North Carolina.

133. Plaintiff Robert Hoffman, Jr. was exposed to Paraquat manufactured and sold by Defendants.

134. Plaintiff Robert Hoffman, Jr. worked on farms in North Carolina from approximately 1970 until approximately 1976, where he was directly exposed during the spraying, mixing, loading, and/or cleaning of equipment required to apply Paraquat.

135. During this time, Plaintiff Robert Hoffman, Jr. was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants. During that time, Plaintiff Robert Hoffman, Jr. would also mix, load, spray, and/or clean Paraquat.

136. The Paraquat to which Plaintiff Robert Hoffman, Jr. was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or 2) through the olfactory bulb; and/or 3) through respiration into the lungs; and/or 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his

Case ID: 220102344

nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

137.   Plaintiff Robert Hoffman, Jr. was diagnosed with Parkinson's disease in or about 2010.

138.   Plaintiff Robert Hoffman, Jr. had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

139.   Plaintiff Robert Hoffman, Jr. was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

140.   Plaintiff Robert Hoffman, Jr. heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

141.   Plaintiff Robert Hoffman, Jr. had no reason to suspect that his working on a farm where Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

142.   Defendants' acts and omissions were a legal, proximate, and substantial factor in causing Plaintiff Robert Hoffman, Jr. to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

143.   By reason of the premises, it became necessary for Plaintiff Robert Hoffman, Jr. to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Plaintiff Robert Hoffman, Jr.'s damages in this respect are presently unascertained as said services are still continuing.

144.   By reason of the premises, it will be necessary for Plaintiff Robert Hoffman, Jr. to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Plaintiff Robert Hoffman, Jr.'s damages in this respect are presently unascertained as said services are still continuing. Plaintiff Robert Hoffman, Jr. prays leave to insert elements of damages in this respect when the same are finally determined.

Case ID: 220102344

145.   By reason of the premises, Plaintiff Robert Hoffman, Jr. has been at times unable to follow Plaintiff Robert Hoffman, Jr.'s regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Plaintiff Robert Hoffman, Jr. prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

146.   By reason of the premises, Plaintiff Robert Hoffman, Jr. has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

147.   By reason of the premises, Plaintiff Robert Hoffman, Jr. has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

## PLAINTIFF HARRY HOOTS, JR.'S EXPOSURE TO PARAQUAT AND DEFENDANTS' TORTIOUS CONDUCT RESULTED IN HIS DEVELOPING PARKINSON'S DISEASE

148.   Plaintiff Harry Hoots, Jr. hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

149.   Plaintiff Harry Hoots, Jr. is a resident of Flat Rock, North Carolina.

150.   Plaintiff Harry Hoots, Jr. was exposed to Paraquat manufactured and sold by Defendants.

151.   Plaintiff Harry Hoots, Jr. worked on farms in North Carolina from approximately 1985 until approximately 1999, where he was directly exposed during the spraying, mixing, loading, and/or cleaning of equipment required to apply Paraquat.

152.   During this time, Plaintiff Harry Hoots, Jr. was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants. During that time, Plaintiff Harry Hoots, Jr. would also mix, load, spray, and/or clean Paraquat.

153.   The Paraquat to which Plaintiff Harry Hoots, Jr. was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues

Case ID: 220102344

(including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or 2) through the olfactory bulb; and/or 3) through respiration into the lungs; and/or 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

154.    Plaintiff Harry Hoots, Jr. was diagnosed with Parkinson's disease in or about 1995.

155.    Plaintiff Harry Hoots, Jr. had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

156.    Plaintiff Harry Hoots, Jr. was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

157.    Plaintiff Harry Hoots, Jr. heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

158.    Plaintiff Harry Hoots, Jr. had no reason to suspect that his working in a capacity necessitating exposure or use of Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

159.    Defendants' acts and omissions were a legal, proximate, and substantial factor in causing Plaintiff Harry Hoots, Jr. to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

160.    By reason of the premises, it became necessary for Plaintiff Harry Hoots, Jr. to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Plaintiff Harry Hoots, Jr.'s damages in this respect are presently unascertained as said services are still continuing.

161.    By reason of the premises, it will be necessary for Plaintiff Harry Hoots, Jr. to incur future

Case ID: 220102344

expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Plaintiff Harry Hoots, Jr.'s damages in this respect are presently unascertained as said services are still continuing. Plaintiff Harry Hoots, Jr. prays leave to insert elements of damages in this respect when the same are finally determined.

162. By reason of the premises, Plaintiff Harry Hoots, Jr. has been at times unable to follow regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Plaintiff Harry Hoots, Jr. prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

163. By reason of the premises, Plaintiff Harry Hoots, Jr. has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

164. By reason of the premises, Plaintiff Harry Hoots, Jr. has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

**PLAINTIFF ESTATE OF KENNETH WADE, SR.'S EXPOSURE TO PARAQUAT AND DEFENDANTS' TORTIOUS CONDUCT RESULTED IN HIS DEVELOPING PARKINSON'S DISEASE**

165. Plaintiff Estate of Kenneth Wade, Sr. hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

166. Decedent Kenneth Wade, Sr. was a resident of Vossburg, Mississippi.

167. Decedent Kenneth Wade, Sr. was exposed to Paraquat manufactured and sold by Defendants.

168. Decedent Kenneth Wade, Sr. worked and lived on a farm in Mississippi from approximately 1970 until approximately 1980s, where he was directly exposed during the spraying, mixing, loading, and/or cleaning of equipment required to apply Paraquat.

Case ID: 220102344

169.    During this time, Decedent Kenneth Wade, Sr. was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants. During that time, Decedent Kenneth Wade, Sr. would also mix, load, spray, and/or clean Paraquat.

170.    The Paraquat to which Decedent Kenneth Wade, Sr. was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or 2) through the olfactory bulb; and/or 3) through respiration into the lungs; and/or 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

171.    Decedent Kenneth Wade, Sr. was diagnosed with Parkinson's disease in or about 2019.

172.    Decedent Kenneth Wade, Sr. had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

173.    Decedent Kenneth Wade, Sr. was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

174.    Decedent Kenneth Wade, Sr. heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

175.    Decedent Kenneth Wade, Sr. had no reason to suspect that his working in a capacity necessitating exposure or use of Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

176.    Defendants' acts and omissions were a legal, proximate, and substantial factor in causing Decedent Kenneth Wade, Sr. to suffer severe and permanent physical injuries, pain, mental

28

Case ID: 220102344

anguish, and disability.

177. By reason of the premises, it became necessary for Decedent Kenneth Wade, Sr. to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries.

178. By reason of the premises, Decedent Kenneth Wade, Sr. had been at times unable to follow regular employment, incurred special damages in a presently unascertained sum. Plaintiff Estate of Kenneth Wade, Sr. prays leave to insert elements of damages with regards to past wage loss and lost earning capacity when the same are finally determined.

179. By reason of the premises, Plaintiff Estate of Kenneth Wade, Sr. has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

180. By reason of the premises, Plaintiff Estate of Kenneth Wade, Sr. has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

## PLAINTIFF GEORGE CARPENTER'S EXPOSURE TO PARAQUAT AND DEFENDANTS' TORTIOUS CONDUCT RESULTED IN HIS DEVELOPING PARKINSON'S DISEASE

181. Plaintiff George Carpenter hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

182. Plaintiff George Carpenter is a resident of Eaton Rapids, Michigan.

183. Plaintiff George Carpenter was exposed to Paraquat manufactured and sold by Defendants.

184. Plaintiff George Carpenter worked and lived on a farm in Michigan from approximately 1976 until approximately 1980, where he was directly exposed during the spraying, mixing, loading, and/or cleaning of equipment required to apply Paraquat.

185. During this time, Plaintiff George Carpenter was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants. During that time, Plaintiff George

29

Case ID: 220102344

Carpenter would also mix, load, spray, and/or clean Paraquat.

186. The Paraquat to which Plaintiff George Carpenter was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or 2) through the olfactory bulb; and/or 3) through respiration into the lungs; and/or 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

187. Plaintiff George Carpenter was diagnosed with Parkinson's disease in or about 2013.

188. Plaintiff George Carpenter had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

189. Plaintiff George Carpenter was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

190. Plaintiff George Carpenter heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

191. Plaintiff George Carpenter had no reason to suspect that his working in a capacity necessitating exposure or use of Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

192. Defendants' acts and omissions were a legal, proximate, and substantial factor in causing Plaintiff George Carpenter. to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

193. By reason of the premises, it became necessary for Plaintiff George Carpenter to incur expenses from medical care and treatment, and related costs and expenses required in the

Case ID: 220102344

care and treatment of said injuries. Plaintiff George Carpenter's damages in this respect are presently unascertained as said services are still continuing.

194.   By reason of the premises, it will be necessary for Plaintiff George Carpenter to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Plaintiff George Carpenter's damages in this respect are presently unascertained as said services are still continuing. Plaintiff George Carpenter prays leave to insert elements of damages in this respect when the same are finally determined.

195.   By reason of the premises, Plaintiff George Carpenter has been at times unable to follow regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Plaintiff George Carpenter prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

196.   By reason of the premises, Plaintiff George Carpenter has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

197.   By reason of the premises, Plaintiff George Carpenter has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

## CAUSES OF ACTION

### COUNT I - STRICT PRODUCTS LIABILITY DESIGN DEFECT

198.   Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

199.   Defendants are liable to Plaintiffs under a products liability theory for marketing a defectively-designed product, as well as for failing to adequately warn of the risk of severe neurological injury caused by chronic, low-dose exposure to Paraquat.

200.   At all relevant times, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and

Case ID: 220102344

their corporate predecessors designed, manufactured, distributed, and sold Paraquat for use in the State of Pennsylvania.

201. At all relevant times and places, the Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors, designed, manufactured, distributed, and sold was used in the intended or a reasonably foreseeable manner.

202. Plaintiffs were exposed to Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, distributed, and sold. As a result of that exposure, Paraquat entered Plaintiffs' body causing Plaintiffs to develop Parkinson's disease.

203. The Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, distributed, and sold did not perform as safely as an ordinary consumer would have expected it to perform when used in the intended or a reasonably foreseeable manner, in that:

   a.   as designed, manufactured, formulated and packaged Paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed (or areas near where it had been sprayed); and

   b.   when inhaled, ingested, or absorbed into the body, it was likely to cause neurological damage that was both permanent and cumulative, and repeated low-dose exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

204. Alternatively, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' Paraquat products were defectively designed in that the risk of danger inherent in the challenged design outweighed the benefits of such design,

32

Case ID: 220102344

considering, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design.

205.  The design defect existed when the Paraquat left Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors, and their corporate predecessors' possession and control.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

## COUNT II - STRICT PRODUCTS LIABILITY FAILURE TO WARN

206.  Defendants are also liable to Plaintiffs under a products liability theory based on their failure to adequately warn of the risks of Paraquat. Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

207.  When Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors manufactured and sold the Paraquat to which Plaintiffs were exposed, it was known or knowable to Defendants in light of scientific knowledge that was generally accepted in the scientific community that:

a.  Paraquat was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

b.  when inhaled, ingested, or absorbed into the body, it was likely cause latent

33

Case ID: 220102344

neurological damage that was both permanent and cumulative, and that repeated, low-dose exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

208.    The risk of contracting Parkinson's disease from chronic, low-dose exposure to Paraquat presented a substantial danger to users of Paraquat when the product was used in a reasonably foreseeable manner.

209.    An ordinary consumer would not have recognized the potential risk of permanent, irreversible neurological damage, including the risk of contracting Parkinson's disease, from chronic, low-dose exposure to Paraquat.

210.    Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors failed to warn of the potential risk of permanent, irreversible neurological damage from chronic, low-dose exposure to Paraquat, and failed to provide adequate instructions regarding avoidance of these risks.

211.    As a direct and proximate result of Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' marketing a defective product, Plaintiffs suffered the injuries described in this Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

## COUNT III - NEGLIGENCE

212.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

213.    At all relevant times, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and

Case ID: 220102344

their corporate predecessors designed, manufactured, distributed, and sold Paraquat.

214.    Plaintiffs were exposed to Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors marketed, manufactured, distributed, and/or sold.

215.    The Paraquat to which Plaintiffs were exposed was used in the intended or a reasonably foreseeable manner.

216.    At all times relevant to this claim, in researching, designing, manufacturing, packaging, labeling, distributing, and selling Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors owed a duty to exercise ordinary care for the health and safety of the persons whom it was reasonably foreseeable could be exposed to Paraquat, including Plaintiffs.

217.    When Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, packaged, labeled, distributed, and sold the Paraquat to which Plaintiffs were exposed, it was reasonably foreseeable that Paraquat:

    a.    was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

    b.    when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it has been sprayed or areas near where it has been sprayed, it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

218.    In breach of the aforementioned duty to Plaintiffs, Chevron U.S.A. Inc., the Syngenta

Case ID: 220102344

Defendant, FMC Corporation, and their corporate predecessors negligently:

a.   failed to design, manufacture, formulate, and package Paraquat to make it unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed;

b.   designed, manufactured, and formulated Paraquat such that it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause clinically significant neurodegenerative disease, including Parkinson's disease;

c.   failed to conduct adequate research and testing to determine the extent to which exposure to Paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed;

d.   failed to conduct adequate research and testing to determine the extent to which Paraquat spray drift was likely to occur, including its propensity to drift, the distance it was likely to drift, and the extent to which Paraquat spray droplets were likely to enter the bodies of persons spraying it or other persons nearby during or after spraying;

e.   failed to conduct adequate research and testing to determine the extent to which Paraquat was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease;

36

f.   failed to direct that Paraquat be used in a manner that would have made it unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

g.   failed to warn that Paraquat was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause clinically significant neurodegenerative disease, including Parkinson's disease.

219.   Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors knew or should have known that users would not realize the dangers of exposure to Paraquat and negligently failed to take reasonable steps to prevent the foreseeable risk of harm from exposure to Paraquat.

220.   As a direct and proximate result of Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' negligence, Plaintiffs suffered the injuries described in this Complaint.

221.   Additionally, in the course of designing, manufacturing, packaging, labeling, distributing, and selling Paraquat, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors violated laws, statutes, and regulations, including but not limited to: sections of Food & Agriculture Code, Division 7, Chapter 2 (Pesticides) and sections of Title 3, California Code of Regulations, Division 6 (Pesticides).

222.   Plaintiffs were members of the class of persons that said laws, statutes, and regulations were intended to protect.

223.   Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' violations of said laws, statutes, and regulations were also substantial factors in causing Plaintiffs' injuries.

Case ID: 220102344

224.    The injuries that resulted from Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' violations were the kind of occurrence the laws, statutes, and regulations were designed to protect.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

### COUNT IV - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

225.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

226.    At all relevant times, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors engaged in the business of designing, manufacturing, distributing, and selling Paraquat and other restricted-use pesticides and held themselves out as having special knowledge or skill regarding Paraquat and other restricted-use pesticides.

227.    At all relevant times, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, distributed, and sold Paraquat.

228.    Members of the consuming public, including Plaintiffs, were intended third party beneficiaries of the warranty.

229.    Plaintiffs were exposed to Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors, marketed, designed, manufactured, distributed, and/or sold.

230.    The Paraquat to which Plaintiffs were exposed was not merchantable or fit for the ordinary purposes for which it was used, and in particular:

Case ID: 220102344

a. it was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

b. when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

231.  Plaintiffs reasonably relied on Defendants' representations that Paraquat was safe and free of defects.

232.  Defendants had actual knowledge of the PRODUCTS' defects in advance of this litigation.

233.  As a direct and proximate result of Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' breach of implied warranty, Plaintiffs suffered the injuries herein described.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

## COUNT V- PUNITIVE DAMAGES

234.  Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

235.  Defendants' conduct as alleged herein was done with oppression, fraud, and malice.

Case ID: 220102344

Defendants were fully aware of the safety risks of Paraquat. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead farmers and consumers.

236. This was not done by accident or through some justifiable negligence. Rather, Defendants knew that it could turn a profit by convincing the agricultural industry that Paraquat did not cause Parkinson's disease, and that full disclosure of the true risks of Paraquat would limit the amount of money Defendants would make selling Paraquat. Defendants' objection was accomplished not only through its misleading labeling, but through a comprehensive scheme of selective fraudulent research and testing, misleading advertising, and deceptive omissions as more fully alleged throughout this pleading. Plaintiffs were denied the right to make an informed decision about whether to purchase, use, or be exposed to an herbicide, knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiffs' rights.

237. Defendants' conduct, as described above, was extreme and outrageous.  Defendants risked the lives of the consumers and users of Paraquat, including Plaintiffs, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages

238. There is no indication that Defendants will stop their deceptive and unlawful marketing practices unless they are punished and deterred. Accordingly, Plaintiffs request punitive damages against the Defendants for the harms caused to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred,

Case ID: 220102344

attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

(1)     Judgment for Plaintiffs against Defendants;

(2)     For medical and related expenses, according to proof;

(3)     For loss of earnings and/or earning capacity, according to proof;

(4)     For exemplary or punitive damages, according to proof;

(5)     For treble damages;

(6)     For mental and physical suffering, according to proof;

(7)     For Plaintiffs' cost of suit herein;

(8)     For disgorgement of profits, according to proof;

(9)     Default judgment as a sanction for the bad faith destruction of evidence, if any, and according to proof, if any; and

(10)    For such other and further relief as this Court may deem just and proper, including prejudgment interest.

Case ID: 220102344

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable in this action.


Dated:  January 27, 2022

Respectfully submitted,

*/s/  Sarah T. Hansel*
**MOTLEY RICE LLC**
Attorney I.D. No. 319224
210 Lake Dr. East, Suite 101
Cherry Hill, NJ 08002
856-382-4669 Phone
856-667-5133 Fax
shansel@motleyrice.com

Fidelma Fitzpatrick, Esq,
**MOTLEY RICE LLC**
55 Cedar St., STE 100
Providence, RI 02903
(401) 457-7728
(401) 457-7708 |
ffitzpatrick@motleyrice.com

*Attorneys for Plaintiffs*

42

Case ID: 220102344

## VERIFICATION

I, _Shaun Koontz_ , hereby state:

1.  I am the plaintiff in this action;

2.  I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and

3.  I understand that the statements in the Complaint are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_Shaun Koontz_
Plaintiff

_1/4/2022_
Date

## VERIFICATION

I, _John Pierce_ , hereby state:

1.   I am the plaintiff in this action;

2.   I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and

3.   I understand that the statements in the Complaint are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_John Pierce_
Plaintiff

_1-8-2022_
Date

Case ID: 220102344

## VERIFICATION

I, *Phyllis Welsh*, hereby state:

1.  I am the plaintiff in this action;

2.  I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and

3.  I understand that the statements in the Complaint are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_____
Plaintiff

_____
1 / 8 / 2022
Date

Case ID: 220102344

## **VERIFICATION**

I, _FRANK L BAXTER_, hereby state:

1.  I am the plaintiff in this action;

2.  I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and

3.  I understand that the statements in the Complaint are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_Frank L Baxter_
_____
Plaintiff

_1/6/2022_
_____
Date

Case ID: 220102344

## **VERIFICATION**

I, Robert T. Hoffman Jr , hereby state:

1. I am the plaintiff in this action;

2. I verify that the statements made in the foregoing Complaint are true and

correct to the best of my knowledge, information and belief; and

3. I understand that the statements in the Complaint are made subject to the

penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Plaintiff

January 5, 2022
Date

Case ID: 220102844

## VERIFICATION

I, Harry Lutherllott JR hereby state:

1.  I am the plaintiff in this action;

2.  I verify that the statements made in the foregoing Complaint are true and

correct to the best of my knowledge, information and belief; and

3.  I understand that the statements in the Complaint are made subject to the

penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_____
Plaintiff

_____
Date
01-06-2022

Case ID: 220102344

## **VERIFICATION**

I, _Wade Johnson_, hereby state:

*Mary Elizabeth* (handwritten above "Wade Johnson")

1.   I am the plaintiff in this action;

2.   I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and

3.   I understand that the statements in the Complaint are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_Mary Elizabeth Wade Johnson_
Plaintiff

Date _01 / 07 / 2022_

**VERIFICATION**

I, *Mary Ann, DPOA for George Carpenter* hereby state:

1.  I am the plaintiff in this action;

2.  I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and

3.  I understand that the statements in the Complaint are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

*Mary a. Ann, DPOA for George Carpenter*
_____
Plaintiff

01/12/2022
_____
Date

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JANUARY 2022**
E-Filing Number: 2201053298

**002344**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| SHAUN EDGAR. KOONTZ | SYNGENTA CROP PROTECTION, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 172 PARKVIEW CIRCLE<br>GRANTSVILLE MD 21536 | C/O THE CORPORATION TRUST COMP 1209 ORANGE STREET<br>WILMINGTON DE 19801 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JOHN PIERCE | CHEVRON U.S.A. INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 7808 WISE LANE<br>KNOXVILLE TN 37920 | 6001 BOLLINGER CANYON ROAD D1248<br>SAN RAMON CA 94583 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| PHYLLIS WELSH | FMC CORPORATION |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 9 66TH STREET<br>SOUTH HAVEN MI 49090 | 2929 WALNUT STREET<br>PHILADELPHIA PA 19104 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 8 | 3 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

**CASE TYPE AND CODE**

2P - PRODUCT LIABILITY

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED<br>PRO PROTHY<br>JAN 27 2022<br>S. RICE | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES          NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: SHAUN EDGAR KOONTZ , JOHN PIERCE , PHYLLIS WELSH , FRANK BAXTER , ROBE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SARAH T. HANSEL | 210 LAKE DRIVE EAST<br>SUITE 101<br>CHERRY HILL NJ 08002 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (856)382-4669 | (856)667-5133 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 319224 | shansel@motleyrice.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *SARAH HANSEL* | Thursday, January 27, 2022, 05:59 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF PLAINTIFFS:**

1. SHAUN EDGAR. KOONTZ
    172 PARKVIEW CIRCLE
    GRANTSVILLE MD 21536
2. JOHN PIERCE
    7808 WISE LANE
    KNOXVILLE TN 37920
3. PHYLLIS WELSH
    9 66TH STREET
    SOUTH HAVEN MI 49090
4. FRANK BAXTER
    7905 EAST FARM ROAD 174
    ROGERSVILLE MO 65742
5. ROBERT HOFFMAN JR.
    705 COLUMBIA AVENUE
    LAKE WACCAMAW NC 28450
6. HARRY HOOTS JR.
    861 TRACY GROVE ROAD
    FLAT ROCK NC 28731
7. KENNETH WADE (ESTATE OF) SR.
    1041 CHRISTIAN COURT
    WATKINSVILLE GA 30677
8. GEORGE CARPENTER
    3910 EAST BELLEVUE HWY.
    EATON RAPIDS MI 48827